## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 05-CR-137

DENNIS MUSURLIAN,

        Defendant.

## RECOMMENDATION TO UNITED STATES
## DISTRICT JUDGE J.P. STADTMUELLER

### NATURE OF THE CASE

On May 17, 2005, a federal grand jury sitting in this district returned a one-count indictment against the defendant, Dennis Musurlian, charging him with knowingly possessing a firearm not registered to him in the National Firearms Registration Transfer Record in violation of 26 U.S.C. § 5861(d). The indictment describes the firearm as a destructive device in the form of a pipe bomb with the pipe taped to a propane cylinder.

Subsequently, the defendant appeared before United States Magistrate Judge William E. Callahan, Jr., for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant filed a motion to suppress evidence and a request for evidentiary hearing. (Docket #16). The parties also filed supplemental briefs. The motion to suppress will be addressed herein.

The defendant challenges evidence seized during the execution of a search warrant at 1506 Goold Street in Racine, Wisconsin, which is the location of the defendant's auto repair business known as American Auto & Truck Repair. Specifically, the defendant seeks suppression of the device seized from a yellow plastic garbage bag located in the break room

area of the auto shop. The defendant also requests suppression of the fruits of the search, including statements given by him to law enforcement officers and the recordings of conversations between him and Chris Peterson, the person the defendant maintains owned the device.

The defendant contends that the warrant was a general warrant which was unsupported by probable cause for the scope of the documents sought. In the alternative, the defendant contends that the search of the break room and the yellow plastic garbage bag found therein exceeded the scope of the warrant and violated his Fourth Amendment right to be free from an unreasonable search. The defendant requests an evidentiary hearing on his motion.

The government asserts that no evidentiary hearing is necessary because the defendant has failed to allege facts sufficient to justify such hearing. The government points out that the defendant agrees that the issue of whether the warrant was a general warrant not supported by probable cause is a legal issue which does not require an evidentiary hearing. The government maintains that the defendant has failed to allege specific, detailed and non-conjectural facts which raise an issue of material fact warranting a hearing.

The government also asserts that the search warrant was supported by probable cause and that the discovery of the explosive device was justified under the plain view doctrine and exigent circumstances. The government argues that even if the search warrant was defective, the admission of the explosive device into evidence is justified by the agent's good faith reliance on the warrant.

## MOTION FOR EVIDENTIARY HEARING

In order to obtain an evidentiary hearing on a motion to suppress, the defendant must demonstrate that there is a disputed issue of material fact. United States v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995). "Evidentiary hearings are necessary only when the party requesting the hearing identifies a significant disputed factual issue that must be resolved." United States v. Martin, Case No. 04-3496, Slip Op at 9 (7th Cir. September 7, 2005)( citing United States v. Wilson, 169 F.3d 418, 426 (7th Cir. 1999). The defendant has the burden of establishing the necessity of a hearing and that burden can be met "only upon presentation of 'definite, specific, detailed and non-conjectural' facts." Rodriquez, 69 F.3d at 141 (quoting United States v. Randle, 996 F.2d 1209, 1212 [7th Cir. 1992] [other citation omitted]).

In this case, the defendant concedes that no evidentiary hearing is necessary on the issue of whether the warrant was a general warrant not supported by probable cause. However, the defendant maintains that a hearing is necessary to establish the manner in which the search was executed, whether the documentary evidence authorized by the warrant had been recovered prior to the discovery of the explosive device and whether the search of the break room where the device was recovered was reasonably related to the items authorized to be seized under the warrant. The defendant disputes that Special Agent Vita Paukstelis' search of the break room was reasonable in light of the documents authorized to be seized in the warrant.

The search warrant authorized the search of the entire premises at 1501 Goold Street in Racine, including the break room. Thus, Agent Paukstelis was authorized to search the break room. The defendant states that he has no information with respect to the manner in which the search was conducted. It appears he may be contending that there would be no need to search the break room if the documents were already located. Such contention does

- 3 -
Case 2:05-cr-00137-JPS   Filed 09/15/05   Page 3 of 11   Document 22

not mandate an evidentiary hearing. The defendant speculates, but provides no facts, supporting his request for an evidentiary hearing. He has failed to articulate "definite, specific, detailed, and non-conjectural facts" which establish the need for an evidentiary hearing. See Rodriguez, 69 F.3d at 141. Accordingly, the defendant's motion for an evidentiary hearing will be denied.

## **MOTION TO SUPPRESS EVIDENCE**

The defendant asserts that the "search warrant was a general warrant authorizing the seizure of all financial documents and was not supported by probable cause." (Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing [Defendant's Motion] at 4). The government disagrees.

"Probable cause is established when, based on the totality of circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. Peck, 317 F.3d 754, 755-56 (7th Cir. 2003). The probable cause standard is a "practiced, nontechnical conception." Illinois v. Gates, 462 U.S. 213, 231-32 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id.

Moreover, a magistrate judge's determination of probable cause should be given considerable weight. United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000). Such determination should only be overruled when the affidavit in support of the warrant, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances from which the magistrate judge could reasonably conclude that the items to

be seized are associated with the crime and located in the place to be searched. Id.; United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999).

In this case, the affidavit in support of the warrant sets out the affiant's experience and basis of knowledge and a description of the location to be searched. It details the initiation of the investigation based on information developed by the affiant, Special Agent Juli Ricchio, and the information she received from two cooperating witnesses, the defendant's ex-wife, Ruth Musurlian, and her attorney, Robert Baratki. (Application and Affidavit for Search Warrant [Affidavit], ¶ 7). The majority of the evidence in the affidavit was obtained from the defendant's sworn statements made as part of his divorce proceedings.

As described in the affidavit, copies of work orders which Special Agent Ricchio had obtained reflected receipts higher than those reported on filed returns. Special Agent Ricchio compared the gross receipts figure from the corporate income tax return to the total amount of paid work orders for each year. Such comparison showed that American Auto & Truck Repair's gross receipts were understated on the federal corporate income tax returns for the years 1992 through 1999 by approximately $849,400. Id. ¶¶ 10-11.

The affidavit explains that Ruth Musurlian received American Auto & Truck Repair's paid work orders each day from the defendant. All the work orders were marked "paid" and either the case, check or credit card slip was attached to the work order. Id. ¶ 12. If no payment was attached, the defendant would write a note stating that he had kept the cash payment for payroll or to buy parts. Id. The work orders were four-part forms. One copy went to the defendant, who needed a copy at the shop in case there was a problem or question regarding a repair. Id. ¶ 35. The defendant's son said that paid work orders were kept at the business in a cooler. Id. ¶ 36.

The defendant did not give all work orders and the corresponding payments to his ex-wife. He admitted in court that he used the payments for living expenses. Id. ¶ 18. The defendant kept the withheld work orders at his business. Id. Except for the defendant and his son, Steve, all employees were paid in cash. Id. ¶ 20.

Ruth Musurlian also took out cash to pay household expenses. Id. ¶ 13. She prepared a Deposit Summary sheet to record all work orders for which payment was received and for which a deposit was made. Id. ¶ 14. If either she or the defendant withheld money from paid work orders, the work orders were not recorded on the Deposit Summary sheet. Id. The defendant provided the Deposit Summary to his accountant. When questioned, he told the accountant that all the gross receipts were reported. Id. ¶ 17.

During her investigation, Special Agent Ricchio observed that American Auto & Truck Repair was an on-going business with employees. Id. ¶ 37. When she visited the business, a person named Dennis told her that copies of bills and invoices are kept at the shop. Id. ¶ 38. Agent Ricchio observed that some of the work orders were kept in a rack on the wall. Id.

The affidavit states that the corporation's tax returns show Scott Musurlian as the sole owner of the business. However, the defendant stated in court that he ran the business on a day-to-day basis and that he and Ruth Musurlian were the sole owners of American Auto & Truck Repair. Id. ¶ 26.

The defendant was required to provide records to the court in his divorce proceeding. The court found him in contempt in November 2001 for failing to provide information about state and federal tax debt and for not providing paid-out information and weekly accountings for American Auto & Truck Repair. Id. ¶ 32.

- 6 -
Case 2:05-cr-00137-JPS   Filed 09/15/05   Page 6 of 11   Document 22

The affidavit in support of the warrant also provides information about the defendant's other business dealings, including his sales of repaired autos. Id. ¶ 16. The defendant acknowledged in court that he did not report the income from these sales. Although he told the court in December 2000 that he only sold three or four cars in the prior 18 months, evidence later introduced in court showed that he sold 18 cars in the one-year period from February 1999 to February 2000. Id.

Further information set forth in the affidavit provides a substantial basis for the issuing magistrate judge to conclude that a search would uncover evidence of violations of federal tax laws at the defendant's business. Upon review, the court concludes that the search warrant was supported by probable cause and was not a general warrant.

The defendant's contention that the agents executing the search exceeded the scope of the warrant by searching the break room and the yellow plastic garbage bag is without merit. "A warrant to search a house or other building authorizes the police to search any closet, container, or other closed compartment that is large enough to contain the contraband or evidence that they are looking for." United States v. Evans, 92 F.3d 540, 543 (7th Cir. 1996).

In this case, the search warrant authorized the search of 1501 Goold Street, the building housing American Auto & Truck Repair. The search of the break room was clearly within the scope of the warrant. The agents had some information about the location of the work orders. However, the warrant did not limit them to only searching those areas. A review of the warrant shows that it authorized the search for numerous other documents, including all accounting books and records for Muscorp, Ltd., d.b.a. American Auto & Truck Repair, financial and bank records, tax returns and tax return information, and personal financial information for the defendant, Ruth Musurlian, and other named individuals.

According to the report of Special Agent Paukstelis, she assisted in the search for records and was in the 'break area." (Government's Response to Defendant's Motion to Suppress Evidence [Government's Response], Exh. C.). She observed three bankers boxes on a coffee table. The middle box had clothes piled on top of it and when she removed the clothes and opened the box, she saw a yellow garbage bag. As she opened the bag, she noticed a shot gun "that appeared very short." Id. She continued to look inside the bag because she could feel that something else was inside. Inside the bag was a propane tank with what appeared to be wires and tape on it.

Given the scope of the warrant, Agent Paukstelis could properly search the bankers box and the yellow plastic garbage bag inside. Although the propane tank with wires on it which the defendant said looked like a bomb was not an item listed in the search warrant, it appeared to Agent Paukstelis to be an illegal homemade explosive device. Therefore, Agent Paukstelis was lawfully entitled to seize it under the plain view doctrine. See Horton v. California, 496 U.S. 128, 142 (1990).

The plain view doctrine allows a law enforcement officer to conduct warrantless seizures of private possessions when: 1) the officer has not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) the incriminating character of the evidence is "immediately apparent"; and, 3) the officer has a lawful right of access to the object itself. Horton, 496 U.S. at 142; United States v. Willis, 37 F.3d 313, 316 (7th Cir. 1994). Based on the search warrant, Agent Paukstelis was lawfully in the break area of the building and lawfully in a position to see the explosive device. The incriminating nature of the device was immediately apparent and she had a lawful right of access to it. Therefore, Agent Paukstelis was legally entitled to seize the explosive device under the plain view doctrine. Id.; see also, United States v. Brown, 79 F.3d 1499, 1508 (7th Cir. 1996).

The explosive device also was subject to seizure based on exigent circumstances. Exigent circumstances exist when there is a compelling need for official action and no time to secure a warrant. United States v. Saadeh, 61 F.3d 510, 516 (7th Cir. 1995) (citing Michigan v. Tyler, 436 U.S. 499, 509 [1978]). The existence of exigent circumstances is analyzed from the perspective of the law enforcement officers at the scene. Saadeh, 61 F.3d at 516. The question is not what the officers could have done but rather whether, at the time, they had a reasonable belief that there was a compelling need to act and no time to obtain a warrant. Id. The government bears the burden of proving that its agents had an objectively reasonable belief that exigent circumstances existed at the time of their warrantless entry. See United States v. Robles, 37 F.3d 1260, 1263 (7th Cir.1994).

In this case, Agent Paukstelis observed what appeared to be a homemade explosive device in the yellow garbage bag while she was searching for the documents listed in the search warrant. The defendant warned the agents to be careful because it looked like the device was a bomb. Under the circumstances, Agent Paukstelis had a reasonable concern for her safety and the safety of others in the building. Given the nature of the device, the agents had a reasonable belief that there was a compelling need for immediate action and no time to obtain a warrant. See Saadeh, 61 F.3d at 516. Therefore, the court concludes that exigent circumstances also justified the seizure of the explosive device.

Furthermore, even if the court were to assume that the search warrant itself was defective in some manner, any evidence seized need not be suppressed because the agents reasonably relied upon the search warrant in good faith. In United States v. Leon, 468 U.S. 897, 926 (1984), the Supreme Court held that the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective warrant if the officers conducting the search acted in objectively reasonable reliance on the search warrant and it was issued by a

detached and neutral magistrate judge. Massachusetts v. Sheppard, 468 U.S. 981 (1984).

Here, the agents conducting the search could reasonably rely on the search warrant. Contrary to the defendant's contention's, the warrant was supported by probable cause. Moreover, the defendant does not contend that the affidavit contained false information or that the issuing judge was not detached and neutral. Accordingly, the good faith exception articulated by the Court in Leon is applicable in this case. Thus, evidence obtained during the search is not subject to suppression.

The defendant also seeks suppression of the statements he gave to agents and the recording of conversations between him and Chris Peterson as the fruits of the invalid search. Since the court finds that the search was proper, there is no basis for suppression of the defendant's statements or the recordings.

In light of the foregoing, the court concludes that the evidence seized pursuant to the search warrant, as well as the defendant's statements are not subject to suppression. Therefore, the court will recommend that the district judge enter an order denying the defendant's motion to suppress evidence and statements.

## **CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** that defendant's motion for an evidentiary hearing be and hereby is **denied**. (Docket #16).

**IT IS RECOMMENDED** that United States District Judge J.P. Stadtmueller enter an order **denying** the defendant's motion to suppress evidence (Docket #16).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's

electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2005.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge